440 A.2d 635

**COMMONWEALTH of Pennsylvania,**

v.

**Samuel FOSTER, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 1980.

Filed Jan. 29, 1982.

Richard M. Lovenwirth, Pottstown, for appellant.

Ronald T. Williamson, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before CAVANAUGH, MONTEMURO and DiSALLE, JJ.

PER CURIAM:

Appellant, Samuel Foster, appeals from the lower court's denial, after hearing, of his requested relief under the Post-

conviction Hearing Act.[1] (hereinafter P.C.H.A.) Appellant claims that his trial and appellate counsel were ineffective for failing to raise the defense of Agreement on Detainers, 42 Pa.C.S.A. § 9101, eff. June 27, 1978, a reenactment of the Act of September 8, 1959, P.L. 829, No. 324, § 1, 19 P.S. § 1431.[2]

The salient facts are: The offense for which defendant was convicted occurred in Upper Moreland Township, Montgomery County, on July 10, 1972, and a criminal complaint was lodged against defendant on July 12, 1972. The day before, July 11, 1972, petitioner had been arrested on another offense in New Jersey. He was subsequently tried on the New Jersey offense, convicted and transferred to Federal custody. In July of 1972, the Upper Moreland Police Department lodged detainers against petitioner under the name Ralph Hargrove, a/k/a Samuel Foster, in Cinnaminson Township, New Jersey, but the department was not informed until September, 1973 that petitioner was incarcerated in the federal penitentiary in Petersburg, Virginia. On October 31, 1973, petitioner was for some reason delivered to the Philadelphia Detention Center apparently on the order of Judge Blake of Philadelphia.[3] According to stipulation by counsel, however, petitioner was in fact brought into Philadelphia on Montgomery County's detainer. Nevertheless, Upper Moreland authorities were *not* informed of his presence in Philadelphia until late December, 1973 or early January, 1974.

Appellant was then arraigned on the subject charges on January 3, 1974. A preliminary hearing was scheduled for January 10, 1974, but was postponed. Subsequently, on April 8, 1974, petitioner was sent *back* to Petersburg, Virgin-

1. Act of January 25, 1966, P.L. (1965) 1580, as amended 19 P.S. § 1180-1, et seq. (Supp.1981–82)

2. Although appellant raises numerous allegations on this appeal, we regard this as the most crucial.

3. The record does not indicate how the Philadelphia Court system became involved, however, the P.C.H.A. Court speculated that Philadelphia wanted to dispose of its charges involving this defendant.

ia, pursuant to an order issued by Judge Blake of Philadelphia. There was a gap in the chronology of events presented at the P.C.H.A. hearing, but it is apparent from the fact that a bail bond was issued on May 28, 1974, and from the testimony of Albert Deutsch, Esq., petitioner's trial counsel, that petitioner was released from Federal custody some time between April 8, 1974 and May 28, 1974, and *voluntarily* returned to Pennsylvania. The preliminary hearing was then held on July 9, 1974. On August 21, 1974, defendant appeared before Judge Smillie of Montgomery County, and agreed to a postponement of trial until October, 1974 so that his trial could be consolidated with a co-defendant's trial. A consolidated trial commenced on October 2, 1974, but on October 3, 1974, a severance was ordered. Defendant's trial proceeded, resulting in verdicts of guilty on October 7, 1974.

Specifically, appellant claims that his trial and appellate counsel were ineffective for failing to raise the defense of Article IV(e) of the Agreement on Detainers. Article IV(e) states that

> [I]f trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment . . ., such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Because of serious omissions in the testimony of the P.C.H.A. hearing, we cannot at this juncture decide appellant's claim of ineffectiveness of counsel.

For example, *why* was the petitioner-appellant sent back to the federal penitentiary in Petersburg, Virginia, discharged and then *voluntarily* returned to Pennsylvania?

Did petitioner *request* the return to Virginia thus perhaps altering his right to a trial before his return? More importantly, was this (as the record tends to suggest) whole area part of petitioner's admitted strategy to "buy" time and "rehabilitate" himself in the eyes of the Pennsylvania court? Indeed, a careful reading of the trial transcript reveals that during the P.C.H.A. hearing below, trial counsel himself was

never asked the crucial question of *why* the right to trial before return was not raised, even thought this question was asked of others during the same proceeding.

Because of this glaring omission in the P.C.H.A. testimony, any decision at this point would be based in large part on speculation as to why counsel omitted this argument. We cannot assume that there can be *no* reason to omit and summarily order the discharge of a man found guilty of several serious crimes (and with a history of other crimes). On the contrary, there *may* have been good reasons, based on sound inferences drawn from the record and based on the clear opinion of the court below—an opinion written by one who had the opportunity to personally observe the crucial parties and their testimony and which is to be accorded great deference under the law of our Commonwealth.

Therefore, we are remanding for further testimony as to the reasons for counsel's actions since it is *not* absolutely clear from the record that no reasonable basis existed for those actions.

This court shall retain jurisdiction.

Decision was rendered prior to DiSALLE, J., leaving the bench of the Superior Court of Pennsylvania.